<partyblock>

Building Exterior Services Trust of New York, Plaintiff,

against

A.W. Farrell & Son, Inc.; Bestoration Contracting, Inc.; Colonial Roofing Co., d/b/a Colonial General Construction; Danny Thompson Inc. & Thompson Roofing & Sheet Metal; Diamond Roofing Co., Inc.; Frank J. Tucek & Son, Inc.; Gouverneur Roofing, Siding & Sheet Metal Co., Inc.; HST Roofing, Inc.; Jamestown Roofing, Inc.; JR Construction, LLC; Long Island Roofing & Repairs; McCracken Construction, LLC; Murray Roofing Co., Inc.; Roofaid, Inc.; Titan Roofing, Inc.; Vanguard Organization, Inc.; and Van Houten Brothers, Inc., Defendants.

900983-2015

Kenney Shelton Liptak Nowak LLP
Attorneys for Plaintiff
(Jessica N. Reich, of counsel)
The Calumet Building
233 Franklin Street
Buffalo, New York 14202

Phillips Lytle LLP
Attorneys for A.W. Farrell & Son, Inc.
(Craig R. Bucki, of counsel)
One Canalside
125 Main Street
Buffalo, New York 14203

Richard M. Platkin, J.

By this action, plaintiff Building Exterior Services Trust of New York ("BEST" or [*2]"Trust") seeks a judgment against, among others, defendant A.W. Farrell & Son ("defendant" or "Farrell") for unpaid monetary assessments. Defendant moves pre-answer pursuant to CPLR 3211 for the dismissal of plaintiff's claim and for dismissal of a cross claim alleged by defendant Frank J. Tucek & Son, Inc. ("Tucek").

BACKGROUND

In February 1994, The New York State Roofing Contractors Compensation Trust ("RCCT") was formed as a group self-insurance trust ("GSIT") pursuant to the Workers' Compensation Law. The employer-members of RCCT were engaged in the business of "roofing, waterproofing, roof decking and other roof systems". Defendant acknowledges that it was a member of RCCT, but claims that its membership was limited to the period from February 1994 until April 1994.

Effective June 2000, RCCT reorganized and continued operations through BEST. The affairs of BEST were governed by a Declaration of Trust, an Indemnity Agreement and Bylaws (collectively "Trust Documents"), all executed in or about June 2000. In May 2003, BEST voluntarily ceased writing workers' compensation insurance, but continued to administer outstanding claims and liabilities.

In 2013, the Workers' Compensation Board ("WCB") notified BEST that it was in danger of becoming underfunded, in which case the WCB would assume administration of the Trust. The Trustees, with the approval of the WCB, issued an assessment in 2013 to certain former members of the Trust ("2013 assessment"). Thirteen of 31 employers paid the assessment, and defendant is among those that refused to pay. Based on a continuing shortfall, the Trustees issued a second assessment in 2014 ("2014 assessment"). Defendant again refused to pay.

BEST then commenced this collection action against the entities that had failed to pay the 2013 and 2014 assessments, including defendant.[FN1]

In its complaint, the Trust alleges that each named defendant's failure to pay the assessments constitutes a willful breach of the Trust Documents. Defendant moves pursuant to CPLR 3211 (a) (1), (a) (5) and (a) (7) to dismiss the complaint and Tucek's cross claim.

ANALYSIS

In seeking dismissal of the complaint, defendant argues principally that: (a) it terminated its membership in RCCT in 1994 and never agreed to be bound by the Trust Documents executed in 2000; (b) even if it were so bound, Farrell is not a "member" of the Trust, and the Trust Documents do not authorize an assessment to be levied against a former member or non-member under the circumstances presented here; and (c) any authority that the Trustees did have to assess a former member expired in 2003 and, therefore, the breach-of-contract claim is barred by the expiration of the statute of limitations.

Dismissal is warranted under CPLR 3211 (a) (1) if documentary evidence conclusively establishes a defense as a matter of law (Haire v Bonelli, 57 AD3d 1354, 1356 [3d Dept 2008], citing Beal Sav. Bank v Sommer, 8 NY3d 318, 324 [2007]; see Goshen v Mutual Life Ins. Co. of NY, 98 NY2d 314, 326 [2002]; Angelino v Michael Freedus, D.D.S., P.C., 69 AD3d 1203 [3d [*3]Dept 2010]). On a motion to dismiss made pursuant to CPLR 3211 (a) (7), "the Court must afford the pleadings a liberal construction, take the allegations of the complaint as true and provide plaintiff the benefit of every possible inference" (EBC 1, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]). However, the Court need not "accept as true legal conclusions or factual allegations that are either inherently incredible or flatly contradicted by documentary evidence" (1455 Washington Ave. Assoc. v Rose & Kiernan, 260 AD2d 770, 771 [3d Dept 1999] [internal quotation marks omitted]).

In claiming that documentary evidence establishes its lack of assent to the Trust Documents, defendant submits the affidavit of its chief financial officer, John Bauer, who avers that by April 30, 1994, Farrell had stopped making contributions into BEST, ceased obtaining workers' compensation coverage from BEST, and no longer was a member of BEST. Bauer further avers that defendant has not been a member of the New York State Roofing Contractors Association, Inc., or its successor organization, since at least 1999, thus rendering it ineligible for membership in BEST under the terms of the Trust Documents.

However, "affidavits submitted by a defendant do not constitute documentary evidence upon which a proponent of dismissal [under CPLR 3211 (a) (1)] can rely" (Crepin v Fogarty, 59 AD3d 837, 838 [3d Dept 2009]; see Marston v General Elec. Co., 121 AD3d 1457, n 2 [3d Dept 2014]). And even if the Court were to rely upon defendant's moving affidavit, plaintiff submits proof in opposition to the motion showing that BEST continued to be the workers' compensation insurer for Farrell as late as May 12, 2003. Plaintiff also submits proof that defendant's representative was a trustee of BEST and a signatory to the Trust Documents. Under the circumstances, the present record fails to conclusively defeat plaintiff's claim that defendant was a member of BEST at the time the Trust Documents were executed.

Next, defendant argues that the Trust Documents authorize assessments only of "members", and Farrell was not a member of BEST when the 2013 or 2014 assessments were made. Section 2.7 of the Declaration of Trust defines a "Member" as an employer . . . who is a current, paid member of the New York State Roofing Contractors Association and who satisfies the requirements for eligibility contained in [the] Declaration of Trust, the Indemnity Agreement, and the Bylaws, and who has been accepted by the Trustees for membership pursuant to the provisions of said documents.[FN2]

Defendant contends that, at the time of the 2013 and 2014 assessments, it was not making regular contributions to the Trust and was neither a "current, paid member" of the New York State Roofing Contractors Association nor eligible for such membership.

In arguing that the Trust Documents do not permit an assessment to be imposed against former members, defendant relies heavily on Metal Goods & Mfrs. Ins. Trust Fund v Advent Tool & Mold, Inc. (19 Misc 3d 608 [Sup Ct, Erie County 2008], affd 61 AD3d 1412 [4th Dept 2009]). In Metal Goods, Supreme Court determined, on cross motions for summary judgment, that inactive former members of a GSIT were not "employers" within the meaning of the governing trust documents and, therefore, were not subject to assessments. The Appellate [*4]Division affirmed, holding that, even if the governing trust documents authorized retroactive assessments on former members, they did not authorize assessments targeted at a limited class of non-members (61 AD3d at 1314).

Defendant maintains that the provisions of the Trust Documents referring to "members" are analogous to those interpreted in Metal Goods and, therefore, the same conclusions should follow. Specifically, defendant cites Section 5.3 of the Declaration of Trust, which obliges "[e]ach Member [to] pay such contributions, assessments or other charges as may be determined by the Trustees or required by. . . this Declaration of Trust, the Indemnity Agreement, or the Bylaws . . . ." Defendant also references various provisions within article IV of the Indemnity Agreement that authorize the Trustees to establish the levels of contributions and assessments for "members", including the imposition of assessments on "members" to make up a deficiency, and oblige "members" to promptly pay all assessments ( 4.1, 4.11 [c]). In addition, defendant cites article I of the Indemnity Agreement, which imposes joint and several liability for certain obligations upon "members" ( 1.2, 1.3, 1.4, 1.5). According to defendant, all of these provisions limit BEST's authority to issue assessments to current members and do not authorize assessments to be imposed upon former members.

Defendant further contends that the 2013 and 2014 assessments are not authorized by Section 4.8 of the Indemnity Agreement, which governs the "Assessment of Members". Specifically, defendant cites the last sentence of the section, which reads: "Each Member covenants and agrees to make payment of any deficiency assessment, pro-rated, in accordance with the Declaration of Trust or the Bylaws, for any fiscal year or part thereof during which the Member participated in the Trust, whether or not still a Member in good standing." According to defendant, this provision must be read together with the first sentence, which authorizes the Trust to impose assessments on "members", and thus is not an independent source of authority to assess non-members.

Finally, defendant argues that the only provision in the Trust Documents that may have permitted plaintiff to impose assessments upon former members of BEST, Section 10.4 of the Declaration of Trust, is inapplicable to the 2013 and 2014 assessments. Section 10.4, which is included with the provisions governing termination of the Trust, provides, in pertinent part: "[I]f on cessation of activities as provided above, the remaining Trust Assets are insufficient to satisfy the obligations of the Trust, such deficiencies shall be made up by assessments against Members and former Members who were participating in the Trust in the fiscal year in which such deficiency occurred . . . ." It is defendant's position that this section would have authorized an assessment against a former member only if there had been a deficit when BEST ceased operations in May 2003.

In opposition, plaintiff emphasizes the Trustees' express authority under Section 10.4 of the Declaration of Trust to assess former members and the language of Section 4.8 of the Indemnity Agreement obliging members to pay a deficiency assessment regardless of "whether or not still a Member in good standing". Plaintiff also cites Section 2.7 of the Bylaws, which provides that "withdrawal shall not relieve the Member from any obligation to pay contributions, assessments, or other expenses incurred, accrued or unpaid at any time before the effective date of such withdrawal."

In considering the parties' arguments, the Court first rejects plaintiff's argument that [*5]Section 2.7 of the Bylaws authorized the challenged assessments. While that provision makes clear that a withdrawing member is not relieved of any obligation to pay assessments incurred, accrued or unpaid at the time of withdrawal, it does not provide BEST with an independent source of authority to issue post-withdrawal assessments.

The present record does not, however, foreclose plaintiff's reliance on Section 4.8 of the Indemnity Agreement as a source of authority for the challenged assessments. According to the complaint, the Trustees were advised by the WCB in 2013 that BEST's assets were insufficient to meet projected liabilities. In response to that notification, and with the approval of the WCB, the Trustees issued the pro-rata assessments that are the subject of this action. Under Section 4.8 of the Indemnity Agreement, defendant became obliged to "pay [this] deficiency assessment, pro-rated, in accordance with the Declaration of Trust or the Bylaws, for any fiscal year or part thereof during which [Farrell] participated in the Trust, whether or not still a Member in good standing".

The foregoing language of Section 4.8 makes "clear that all members of the Trust, whether current or former, are required to pay deficiency assessment[s]  for any [fiscal] year' that such member participated,  whether or not still a member in good standing,' so long as the Trust's assets are insufficient to discharge its liabilities" (Harte v Association for the Advancement of the Blind & Retarded, Inc., 2007 NY Slip Op 34362 [U] [Sup Ct, NY County 2007]). In fact, the Metal Goods decision, upon which defendant places great weight, distinguished Harte based upon the absence of a "comparable provision to that contained in the indemnity agreement in the Harte case" (Metal Goods, 19 Misc 3d at 614-615).[FN3]

The present record also does not foreclose plaintiff's reliance on Section 10.4 of the Declaration of Trust, which speaks directly to the obligations of former members upon the termination of the Trust. While far from a model of drafting clarity, Section 10.4 plainly contemplates that present and former members of the GSIT would be responsible during the winding-up process for their pro-rata share of post-termination deficits attributable to the years in which they obtained workers' compensation insurance from the Trust. Giving the Declaration of Trust a reasonable construction consistent with its evident purpose, the Court is unpersuaded by defendant's contention that the use of the present tense in Section 10.4 was intended to allow the Trustees to remediate deficits existing on the date of termination, but denies the Trustees the ability to maintain the solvency of the Trust during a multi-year run-off period. There simply is nothing in Section 10.4 or elsewhere in the Trust Documents that compels the cramped construction advanced by defendant. Accordingly, assuming that BEST actually was terminated pursuant to Section 10.1, a point that has not been conclusively demonstrated on the present [*6]record,[FN4]

Section 10.4 also may represent a source of authority for the challenged assessments.

In view of these conclusions, defendant's statute-of-limitations defense must be rejected. The statute of limitations for a breach-of-contract cause of action is six years (CPLR 213 [2]), and the claim "accrues at the time of the breach" (Ely-Cruikshank Co. v Bank of Montreal, 81 NY2d 399, 402-403 [1993] [internal quotation marks omitted]; see CPLR 203 [a]). If Section 10.4 of the Declaration of Trust or Section 4.8 of the Indemnity Agreement authorizes BEST to issue post-termination assessments against former members during the ongoing run-off process, a breach-of-contract claim founded upon the failure to pay the assessments did not accrue until defendant refused to pay the assessments (see State of NY Workers' Compensation Bd. v A & T Healthcare, LLC, 85 AD3d 1436, 1437-1438 [3d Dept 2011]).

Finally, as defendant has failed to conclusively establish the absence of a legal obligation to pay the assessments, it would be premature to dismiss the cross claim alleged by Tucek.

CONCLUSION

Accordingly,[FN5]

it is

ORDERED that the motion of A.W. Farrell & Son, Inc. is denied in its entirety; and it is further

ORDERED that the parties shall confer regarding a schedule for discovery and the filing of a note of issue and, within thirty (30) days, either: (i) stipulate to a scheduling order, which shall be submitted to the Court for approval; or (ii) request a scheduling conference with the Court.

This constitutes the Decision and Order of the Court. This Decision and Order is being transmitted to plaintiff's counsel for filing and service; all other papers are being transmitted to the Albany County Clerk. The signing of this Decision and Order shall not constitute entry or filing under CPLR Rule 2220, and counsel is not relieved from the applicable provisions of that Rule respecting filing, entry and Notice of Entry.

Dated: Albany, New York
March 16, 2016
RICHARD M. PLATKIN
A.J.S.C.

Papers Considered:
NYSCEF Documents No.24-31, 36-63.

Footnotes

Footnote 1:The action has been settled and discontinued as against defendants Vanguard Organization, Inc.; Gouverneur Roofing, Siding & Sheet Metal Co. Inc.; Jamestown Roofing, Inc.; and Titan Roofing, Inc.

Footnote 2:The same definition appears in Section 2.7 of the Indemnity Agreement, and the Bylaws are consistent with this definition in all material respects.

Footnote 3:In this connection, defendant also relies upon the decision issued from the bench in NCA Comp., Inc. v 1289 Clifford Ave. (Sup Ct, Erie County Index No. 800229/2015 [Aug. 5, 2015], Walker, J.), However, it appears that in NCA Comp., the plaintiff trust conceded that the defendants had "ceased to qualify for participation in the trust prior" to the date the relevant trust documents were amended to permit assessments against former members (Decision, at 5).

Footnote 4:No documentation is submitted establishing such a termination, and the affidavit of John Conroy, submitted for the first time in reply, merely speaks to BEST having ceased providing workers' compensation coverage and terminating its status as an active GSIT.

Footnote 5:To the extent not specifically addressed herein, the parties' remaining contentions have been considered and found to be unpersuasive.

<form method="LINK" action="../../slipidx/com_div_idxtable.shtml">

<input type="submit" value="Return to Decision List">

</form>

</partyblock>